**UNITED STATES DISTRICT COURT**
**FOR SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| 100 ORCHARD STREET, LLC. D/B/A BLUE MOON HOTEL | Case No.: **1:20-cv-08452** (JMF) |
|  | **FIRST AMENDED COMPLAINT** |
| Plaintiff, |  |
| -against- | **JURY TRIAL DEMANDED** |
| THE TRAVELERS INDEMNITY COMPANY OF AMERICA |  |
| Defendant. |  |

Plaintiff 100 ORCHARD STREET, LLC. d/b/a BLUE MOON HOTEL (hereinafter, "Plaintiff"), brings this First Amended Complaint alleging relief against Defendant, THE TRAVELERS INDEMNITY COMPANY OF AMERICA ("Travelers"), and avers, upon information and belief, as follows

## I.     JURISDICTION

1.     This is a civil action seeking declaratory relief arising from an insurance contract between Plaintiff 100 ORCHARD STREET, LLC. d/b/a BLUE MOON HOTEL and the Defendant.

2.     Plaintiff commenced this action on August 11, 2020 by filing a Complaint in the Supreme Court of the State of New York, County of New York, Index No 653733/2020.

3.     Defendant Travelers was served with Plaintiff's Complaint on September 11, 2020.

4.     Travelers is a citizen of the State of Connecticut which is its state of incorporation and where it maintains a principal place of business.

5.     Plaintiff 100 Orchard Street, LLC is a New York limited liability company. No member of 100 Orchard Street LLC is domiciled in Connecticut.

6.     On October 9, 2020 Defendant filed a notice of removal to the United States District

Court, Southern District of New York alleging complete diversity of citizenship and an amount in controversy exceeding $75,000.00.

7.      Plaintiff moved to remand on the premise that the amount in controversy component was not satisfied.

8.      The Court found federal jurisdiction to be proper and denied Plaintiff's motion to remand.

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Plaintiff and the Defendant and the amount in controversy component has been deemed satisfied.

10.     The Court has personal jurisdiction over Defendant because at all relevant times it has engaged in substantial business activities in the State of New York. At all relevant times Defendant transacted, solicited, and conducted business in New York through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in New York. Defendant purposefully availed itself of personal jurisdiction in New York because it contracted to provide insurance to Plaintiff in New York which is the subject of this case.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the wrongful acts upon which this lawsuit is based occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Plaintiff is a New York limited liability company and Defendant is a corporation that has substantial, systematic, and continuous contacts in the State of New York, and the acts and/or omissions complained of took place, in whole or in part, within the venue of this Court.

## II.      <u>NATURE OF THE CASE</u>

12.     In light of the Coronavirus global pandemic ("COVID-19") and state and local orders ("Civil Authority Orders") mandating that in store businesses cease or restrict operations,

Plaintiff has sustained significant business losses.

13.     Plaintiff's insurance policy is an All Risk Policies and provides coverage for all non-excluded business losses, and thus provides coverage here.

14.     Upon information and belief, at all relevant times the COVID-19 virus was present at and within Plaintiff's insured property and in buildings within a one mile radius of the insured property.

15.     The material dimensions of a property can be altered and damaged through microscopic changes caused by COVID-19. Such damage may produce deadly results to human beings. If a person infected with COVID-19 enters a building, then (until disinfected and decontaminated) the building would be (1) physically altered by the direct physical presence of the virus on surfaces or the air and (2) thus physically damaged, and (3) may potentially be transformed into a superspreading force.

16.     The presence of large numbers of customers and employees in a relatively confined indoor spaces, some of whom are virus carriers, ultimately affects the building. At all relevant times, this caused physical damage to Plaintiff's insured property. So too did the presence of virus carriers within indoor businesses within a one mile radius of the insured premises cause physical damage and loss.

17.     Whether a building has been contaminated prior to the emergency orders or was at imminent risk of contamination can be demonstrated by circumstantial evidence.

18.     COVID-19 was present at the insured location at all relevant times or there was an imminent risk of onsite COVID-19 presence all relative times, or both.

19.     In this matter COVID-19 was present in the hotel and its presence physically caused property loss and damage to property within the insured premises including, but not limited to, furniture, fixtures, hotel equipment, hotel rooms, physical surfaces, hotel common spaces and other

hotel property which will require extensive and costly period of remediation, restoration, repair and replacement. Notably, the City of New York issued an Emergency Executive Order in response to COVID-19 and the pandemic, in part, because COVID-19 itself "physically is causing property loss and damage".

20.     In this matter, actions of civil authorities prohibited access to the insured premises due to damage to property at locations within one mile of the insured premises. The actions of the civil authorities were taken in response to dangerous physical conditions resulting from the damage and/or continuation of covered causes of loss that caused damage. The civil authority orders were issued as a result of covered causes of loss to property at Plaintiff's premises and at locations within one mile of Plaintiff's premises. As a consequence of such foregoing damage, civil authorities issued orders prohibiting access both to the hotel and areas immediately surrounding the damaged properties.

21.     In this matter, the insured's business interruption was caused by direct physical loss of or damage to property at the subject hotel. There was direct physical loss of and damage to property at the hotel caused by a covered cause of loss not excluded by the Policy and a necessary suspension of Plaintiff's operations at the subject hotel was caused by that direct physical loss of and/or damage to property. Plaintiff's business operations were suspended by direct physical loss of and/or damage to its property.

22.     Plaintiff suffered a direct physical loss of and damage to its property and such loss and damage was a result of COVID-19 and a direct result of the orders of the civil authorities and that Plaintiff's suspensions and losses triggered Business income coverage under the Policy.

23.     Per Traveler's chosen language, the Policy obligates Travelers to "pay for direct physical loss of **or** physical damage to covered property.

24.     The Policy provides that Travelers "will pay for direct physical loss of or damage

to Covered Property …caused by <u>or resulting from</u> a Covered Cause of Loss. Travelers thus agreed to cover losses resulting from a "Covered Cause of Loss" defined by Traveler's only as RISKS OF DIRECT PHYSICAL LOSS unless the loss is excluded or limited. Thus Travelers agreed to cover a "loss" resulting from a "risk of direct physical loss".

25.     A policy that requires physical loss or damage does not require that the physical loss or damage be tangible, structural or even visible.

26.     Defendant agreed to cover loss resulting from a "risk of direct physical loss"

27.     As a result, Plaintiff is entitled to declaratory relief that Plaintiff is covered for all business losses that have been incurred.

### III.     <u>PARTIES</u>

28.     At all relevant times, 100 ORCHARD STREET, LLC. d/b/a BLUE MOON HOTEL is a Limited Liability Company authorized to do business and doing business in the State of New York, County of New York.

29.     Plaintiff 100 ORCHARD STREET, LLC. d/b/a BLUE MOON HOTEL operates a hospitality business, i.e. a hotel, whose revenue depends substantially upon the ability of guests to to travel domestically and internationally to stay at the hotel, lodge at the hotel, and patronize businesses in New York City and is otherwise dependent on other items and matters; all of which have either ceased or been substantially restricted due to COVID-19 and Civil Authority Orders pertaining to same

30.     The applicable closure orders were issued in direct response to these dangerous physical conditions, or the threat thereof, and prohibited the public from accessing Plaintiff's business, thereby causing the necessary limitation or suspension of Plaintiff's operations and triggering coverages under the Policy.

31.     At all relevant times, Defendant TRAVELERS provides business interruption

coverage to its insureds, including the Plaintiff.

32.     Defendant TRAVELERS issued an All Risk Insurance Policy to Plaintiff 100 ORCHARD STREET, LLC. d/b/a BLUE MOON HOTEL (Policy Number 660-7P819913) for the period of  January 2, 2020 to January 2, 2021. See, Policy, attached as **Exhibit A**.

33.     The policy, currently in full effect, includes All Risk coverage which incorporates business interruption coverage for, among other things, business personal property and income protection and extra expense.

34.     Plaintiff has paid the policy premiums to TRAVELERS specifically to provide coverages of lost business income and extra expenses in the event of an involuntary business interruption.

35.     In light of the Coronavirus global pandemic ("COVID-19") and state and local orders ("Civil Authority Orders") mandating that  businesses such as Plaintiff's cease or restrict operations, Plaintiff sustained significant business losses. Consequently, Plaintiff properly and promptly submitted an insurance claim to defendant for losses and damages. On or about July 2, 2020, Defendant denied Plaintiff's claim and asserted that Plaintiff was not entitled to any coverage. See, Denial Letter, attached hereto as **Exhibit B.**

## IV.     <u>FACTUAL BACKGROUND</u>

A.     <u>Insurance Coverage</u>

36.     On or about January 2, 2020, Defendant entered into a contract of insurance with the Plaintiff 100 ORCHARD STREET, LLC. d/b/a BLUE MOON HOTEL specifically to provide, among other things, business income coverage in the event of business interruption or closures by order of Civil Authority, and for business losses as a result of property damage at its location in New York County, State of New York (the "Covered Property").

37.     The Covered Property includes a hotel known as BLUE MOON HOTEL located at

100 Orchard Street, New York, New York.

38.     The Covered Property is covered under a Special All Risk Business Insurance Policy to the Plaintiff issued by the Defendant to Plaintiff 100 ORCHARD STREET, LLC. d/b/a BLUE MOON HOTEL with Policy Number 660-7P819913.

39.     The Plaintiff's Policy is currently in full effect, providing, among other things coverage for property, business personal property, income protection & extra expense, and additional coverages between the period of January 2, 2020 to January 2, 2021.

40.     Plaintiff 100 ORCHARD STREET, LLC. d/b/a BLUE MOON HOTEL faithfully paid policy premiums to Defendant, specifically to provide, among other things, coverage for the loss of business income and extra expense sustained in the event of business interruption or closures by order of Civil Authority.

41.     Under the Policy, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the Covered Properties is specifically prohibited by order of civil authority as the direct result of a covered cause of loss to property in the immediate area of Plaintiff's Covered Property. This additional coverage is identified as coverage under "Civil Authority."

42.     In the Policy, Defendant agreed to pay "for direct physical loss of or damage to Covered Property….caused or resulting from a Covered Cause of Loss." A Covered Cause of Loss is defined as all "RISKS OF DIRECT PHYSICAL LOSS" except those that are expressly and specifically listed in the Limitations or  Exclusions sections of the policy.

43.     The Policy includes cause of loss coverages for business income losses and extra expenses from all risks including but not limited to civil authority actions affecting the functionality of one's property.

44.     Losses due to the COVID-19 pandemic and the New York Civil Authority Orders

are a Covered Cause of Loss under the policy because they constitute RISKS OF DIRECT PHYSICAL LOSS and are not otherwise excluded.

45.    In the Policy, apart from general coverage, as part of additional coverages, Defendant agreed to pay for Plaintiff's actual loss of Business Income sustained due to suspension of Plaintiff's operations caused by direct physical loss of or damage to property.

46.    The Policy also includes Civil Authority coverage under which Defendant agreed to pay for actual loss of Business Income sustained when access to the insured premises is prohibited by actions of a civil authority "due to direct physical loss of or damage to property at locations other than described premises, that are within 1 mile of the described premises caused by or resulting from a Covered Cause of Loss. Coverage is triggered because these elements are satisfied herein.

47.    As explained below, the COVID-19 pandemic throughout the State of New York where Plaintiff is located and the New York Civil Authority Orders (and similar civil authority orders issued by local, state, and federal authorities) constitute a Covered Cause of Loss triggering the Business Income, Extra Expense and Civil Authority provisions of the policy.

48.    The COVID-19 pandemic and New York Civil Authority Orders (and similar civil authority orders constitute a Covered Cause of Loss, as they constitute "RISKS OF DIRECT PHYSICAL LOSS" and are not otherwise excluded.

49.    The suspension of Plaintiff's operations was caused by "direct physical loss of or damage to" property in the form of a loss of access to the insured property caused by the COVID-19 pandemic, and the New York Civil Authority Orders.

50.    The COVID-19 Pandemic and the New York Civil Authority Orders separately implicated the Civil Authority coverage because access to the scheduled premises was prohibited by order of a civil authority. And the civil authority order was due to direct physical loss of or

damage to property at locations within one mile of the covered premises, caused by or resulting from "RISK[] OF DIRECT PHYSICAL LOSS" and the COVID-19 pandemic.

51.    The COVID-19 pandemic and/or orders of civil authority related to the COVID-19 pandemic (like the New York Civil Authority Orders) caused "direct physical loss of or damage" to "Covered Property" under the Plaintiff's policy.

52.    As a result of emergency Orders, Plaintiff suffered economic business income and extra expense losses.

53.    Plaintiff further states that it suffered direct physical loss of, or damage to its property causing economic business income and extra expenses losses as a result of:

(i)     actual on-site COVID-19 contamination that caused a loss of, or damage to its property; or

(ii)    its reasonable actions-regardless of government orders-to preserve property and persons from imminent risk of harm; or

(iii)   the risk of imminent harm, as said risk is itself a covered cause of loss; or

(iv)    governmental Orders designating Plaintiff's business as unusable and in other forms; or

(v)     government Orders pursuant to inherent authorities to act in a disaster regardless of the actual presence of COVID-19 virus on site; or

(vi)    the availability of other coverages under the Policy and as otherwise set forth herein.

54.    Having suffered a loss of property and a suspension of operations, Plaintiff submitted a claim to Defendant under the policy. Defendant denied plaintiff's claim.

55.    Based on information and belief, the Defendant accepted the policy premiums with no intention of providing coverage for business income losses resulting from orders of a Civil

Authority that the Covered Properties be shut down or restricted, or any related losses and/or damages.

56.     Defendant's denial of coverage is based on its claim that the Covered Properties did not sustain direct physical loss or damage. *See* Denial Letter, attached hereto as Exhibit B.

57.     However, Defendant's narrow reading of "loss" renders the Civil Authority coverage ineffectual and demonstrates Defendants had no intention of providing coverage for losses Plaintiffs faithfully paid premiums to insure against.

**B.     The Coronavirus Pandemic**

58.     The scientific community, and those personally affected by the virus, recognize the Coronavirus as a cause of real physical loss and damage. It is clear that contamination of the Covered Property would be a direct physical loss requiring remediation to clean the surfaces of the premises.

59.     The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. See, https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces.

60.     The CDC has issued a guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

61.     The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

62.     China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

63.     Within one mile of the insured premises there was direct physical loss of or damage to property caused by or resulting from risk of direct physical loss and the COVID-19 pandemic.

64.     Every essential and non-essential business within one mile of the insured premises was substantially impacted and/or damaged from COVID-19, and/or the risk of direct physical loss,  the pandemic and civil authority orders pertaining to same.  COVID-19 was physically present within such businesses situated within a one mile radius of the insured premises.

65.     COVID-19 was physically present within Gouverneur Hospital located at 227 Madison Street less than a half a mile from the insured premises.

66.     The City of New York issued an Emergency Executive Order stating, in part that COVID-19 "physically is causing property loss and damage."

67.     Alternatively, the imminent and substantial risks of loss and damage justified action to avoid or mitigate such risks.

68.     COVID-19 is a physical substance.

69.     COVID-19 is a human pathogen,

70.     COVID-19 can be present outside the human body in viral fluid particles.

71.     COVID-19 can and does live on and/or remains capable of being transmitted and active on inert physical surfaces.

72.     COVID-19 can and does live on and/or remains capable of being transmitted and active on floors, walls, furniture, desks, tables, chairs, beds, equipment and other items of property for a period of time.

73.     COVID-19 can be transmitted by way of human contact with surfaces and items of physical property on which COVID-19 particles are physically present.

74.     COVID-19 has been transmitted by way of human contact with surfaces and items of physical property located at premises in New York County.

75.     COVID-19 can be transmitted by human to human contact and interaction at premises in New York County, include places such as the business entities herein.

76.     COVID-19 has been transmitted by human to human contact and interaction at premises in New York County.

77.     COVID-19 can be transmitted through airborne viral particles emitted into the air at premises.

78.     COVID-19 has been transmitted by way of human contact with airborne COVID-19 particles emitted into the air at premises in New York County.

79.     The presence of any COVID-19 particles renders items of physical property unsafe.

80.     The presence of any COVID-19 particles on physical property impairs its value, usefulness and/or normal function.

81.     The presence of any COVID-19 particles causes direct physical harm to property,

82.     The presence of COVID-19 particles causes direct physical loss to property.

83.     The presence of COVID-19 particles causes direct physical damage to property.

84.     The presence of any COVID-19 particles at premises renders the premises unsafe, thereby impairing the premises' value, usefulness and/or normal function.

85.     The presence of people infected with or carrying COVID-19 particles renders physical property in their vicinity unsafe and unusable, resulting in direct physical loss to that property.

86.     The presence of people infected with or carrying COVID-19 particles at premises renders the premises, including property located at that premises, unsafe, resulting in direct physical loss to the premises and the property.

87.     State and local governmental authorities, and public health officials around the Country acknowledge that COVID-19 and the Pandemic cause direct physical loss and damage to

property. For example,

- The City of New York issued an Emergency Executive Order in response to COVID-19 and the Pandemic, in part, "because the virus **physically is causing property loss and damage**." (Emphasis added).

- The State of Colorado issued a Public Health Order that "COVID-19….**physically contribute to property loss, contamination and damage**." (Emphasis added).

- Broward County, Florida issued an Emergency Order acknowledging COVID-19 "**is physically causing property damage**." (Emphasis).
- The State of Washington issued a stay at home Proclamation stating that the "COVID-19 pandemic and its progression…remains a public disaster affecting life, health, [and] **property**…" (Emphasis added).

- The State of Indiana issued an Executive Order recognizing that COVID-19 has the propensity to **physically** impact surfaces and personal **property**." (Emphasis added).

- The City of New Orleans issued an order stating that "there is reason to believe that COVID-19 may spread amongst the population by various means of exposure, including the propensity to attach to surfaces for prolonged period of time, thereby spreading from surface to person and **causing property loss and damage** in certain circumstances." (Emphasis added).

- The State of Illinois issued an Executive Order describing COVID-19's "propensity to **physically** impact surfaces and personal property." (Emphasis added).

- The State of New Mexico issued a Public Health Order acknowledging the "threat" COVID-19 "poses" to "**property**." (Emphasis added).

- North Carolina issued a statewide Executive Order in response to the Pandemic not only "to assure adequate protection for lives," but also to "assure adequate protection of….**property**." (Emphasis added).

- The City of Los Angeles issued an Order in response to COVID-19 "because among other reasons, the COVID-19 virus can spread easily from person to person and it is **physically causing property loss or damage** due to its tendency to attach to surfaces for prolonged periods of time." (Emphasis added).

C.    <u>**Civil Authority**</u>

88.    In response to COVID-19 and the Pandemic the Governor of New York has issued

multiple executive orders pursuant to the authority vested by laws of New York.

89.     In response to COVID-19 and the pandemic, New York State pursuant to its authority under New York State Law has issued multiple orders including a Stay at Home Order.

90.     The State of New York is a civil authority as contemplated by the Policy.

91.     The New York State Department of Health is a civil authority as contemplated by the Policy.

92.     The Governor of the State of New York is a civil authority as contemplated by the Policy.

93.     On March 7, 2020, New York Governor Andrew Cuomo declared a Disaster Emergency for the entire state of New York as a result of COVID-19.

94.     On March 12, 2020, Governor Cuomo set restrictions on large gatherings. The Governor declared a state of emergency for the City of New York "due to the threat posed by COVID-19 to the health and welfare of City residents."

95.     On March 16, 2020, Mayor de Blasio extended the state of emergency period declared for the City of New York due to the threat of COVID-19 spreading from person to person and "because the virus physically is causing property loss and damage" as is set forth in Emergency Executive Order No. 100.

96.     On March 20, 2020, the State of New York issued a stay-at-home order that all non-essential workers must stay at home as a result of the COVID-19 pandemic.

97.     For the most part, the emergency Orders (including those causing plaintiff's losses) were issued pursuant to the Executives' inherent emergency powers to deal with disasters that endanger people and property. They were not the result of the legislative or deliberative body's process typical of laws and regulations.

98.     Civil Authority orders also prohibited all non-essential travel, thereby preventing

customers from traveling to and staying at Plaintiff's hotel.

99.     New York State issued statewide "Stay-at-Home," "Shelter-in-Place," or other similarly-termed closure orders, which substantially limited or completely prohibited the operation of Plaintiff's business.

100.    The continuous presence of the coronavirus on or around Plaintiff's premises, and/or the threat thereof, has rendered the premises unsafe and unfit for their intended use and therefore caused physical damage or loss to Plaintiff's property under the Policy

101.    The applicable closure orders were issued in direct response to these dangerous physical conditions, or the threat thereof, and prohibited the public from accessing Plaintiff's business, thereby causing the necessary limitation or suspension of Plaintiff's operations and triggering coverage under the Policy.

102.    As of March 22, 2020, Governor Cuomo ordered all "non-essential businesses" statewide to be closed. See, State's Executive Order 202.6. This Order remained in full effect up to on or about June 8, 2020 when Phase 1 re-opening in New York State commenced.

103.    Plaintiff's operations were also impacted and suspended because businesses that Plaintiff depended on to deliver or receive goods and services were impacted by COVID-19 and civil authority orders pertaining to same.

104.    Further, on April 10, 2020 President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiff:

>       REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?
>
>       PRESIDENT TRUMP: Well it's something  that we've already suggested, we're talking to them. ***Business interruption insurance***, I'd like to see these insurance companies—you know you have people that have paid. When I

was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. ***But if I had it I'd expect to be paid***. You have people. ***I speak mostly to the restaurateurs***, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

See, https://youtu.be/_cMeG5C9TjU (emphasis added).

105.    The President is articulating a few core points:

- Business interruption is a common type of insurance.

- Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

- This pandemic should be covered unless there is a specific exclusion for pandemics.

- If insurers deny coverage, they would be acting in bad faith.

106.    These Orders and proclamations, as they relate to the closure of all "non-essential businesses" and restrictions on essential businesses evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true in places where business is conducted, such as Plaintiffs', as the requisite contact and interaction causes a heightened risk of the property becoming unsuitable for business.

107.    Plaintiff 100 ORCHARD STREET, LLC. d/b/a BLUE MOON HOTEL suffered losses as a direct consequence of the Civil Authority stay-at-home orders for public safety issued by the Governor of New York and the State of New York generally. Accordingly, Plaintiff has

submitted a claim to Defendant related to such losses.

108.    However, Defendant has denied Plaintiff's claims in contravention of the clear policy language entitling Plaintiffs to coverage for business losses arising out of the Civil Authority Orders.

## RELEVANT POLICY PROVISIONS

109.    The losses incurred to Plaintiff's business operations are covered under various policy provisions as described in greater detail below and within the Policy.

110.    First, the policy affirmatively states "We will pay for direct physical loss of or damage to the Covered Property…caused by or resulting from a covered cause of loss. See Policy annexed as Exhibit A.

111.    The operative language, as set forth above is "direct physical loss of or damage to Covered Property at the premises described…" The use of the phrase "physical loss of" in the disjunctive before the word "or" supports a construction of the policy that a loss of use of the property is sufficient to trigger coverage even if the property is not physically damaged. In Plaintiff's case, Plaintiff incurred both physical loss of use of its Covered Property and physical damage.

112.    The Policy's coverage expressly includes loss of use.

113.    Loss of use can occur because of a government order or the imminent risk of harm or both.

114.     Plaintiff's policy of insurance extends coverage to the risk of physical loss as a covered cause of loss.

115.    "Loss" is "the act of losing possession" and "deprivation." Merriam-Webster, www.merriam-webster.com/dictionary/loss.

116.    Plaintiff's insured premises, a building located at 100 Orchard Street is described in the declarations of the Policies and is covered property within the meaning of the Policy.

117.    "Covered Cause of Loss" is defined, in part, as follows in the policy:

  **A. Covered Causes of Loss**
   When Special is shown in the Declarations Covered Causes of Loss
   means RISKS OF DIRECT PHYSICAL LOSS unless the loss is excluded or
   limited in this policy.

118. Further no structural damage to the premises is expressly raised as a requirement for coverage

  under the policy.

119. Next the policy affirmatively states it will pay for the loss of business income due to necessary

  suspension of business operations when the suspension results from a loss of property caused by

  a covered cause of loss:

    We will pay for the actual loss of Business Income you sustain
    due to the necessary "suspension" of your "operations" during the
    "period of restoration". The "suspension" must be caused by direct
    physical loss of or damage to property at premises which are
    described in the Declarations and for which a Business Income Limits
    of insurance is shown in the Declarations. The loss or damage must be caused buy
    or result from a Covered Cause of Loss. With respect to loss of or damage to
    property in the open or property in a vehicle, the described premises includes the
    area within 1000 feet of such premises.

120. Accordingly, Defendant is liable for their insured's business income losses when (1) there is a

  suspension of business operations, (2) the suspension is necessary, (3) the suspension is caused

  by a direct physical loss of property or damage to the property or an imminent risk of direct

  physical loss or damage to the property; and (4) the loss of or damage to property is caused by a

  covered cause of loss.

121. Here all such conditions are satisfied because  in this instance (1) there was and is a suspension

  of business operations, (2) the suspension was and is necessary, (3) the suspension was and is

  caused by a direct physical loss of property or damage to the property or an imminent risk of

  direct physical loss or damage to the property; and (4) the loss of or damage to property was and

  is caused by a covered cause of loss.

122. As set forth above, in response to emergency orders closing off the premises business purposes

  which occurred during the policy period, Plaintiff was forced to cease and continues to cease its

business activities altogether or a vast majority its business activities.

123.  Plaintiff thus suffered the actual loss of Business Income during the policy period which was caused by the loss of (or alternatively, damage to) its property at the covered location.

124.  Plaintiff's lost business income is covered under the policy and has not been excluded from coverage. Plaintiff is entitled to payment for these business income losses.

125.  The Policy has "Civil Authority" coverage that provides coverage for business income losses and extra expenses incurred when (1) a covered loss causes damage to (2) a property other than the insured premises and (3) a civil authority prohibits access to the insured premises, (4) provided that the other property is within one mile of the insured premises.

126.  All four requirements are met here.

127.  Alternatively, the imminent and substantial risks of loss and damage justifies actions to avoid or mitigate such risks.

128.  In this instance, a covered cause of loss caused damage to property at a location other than the subject insured premises and (2) as a consequence of the damage, a civil authority took action that prohibited access both to the Hotel and to an area "immediately surrounding" the "damaged property".

129.  Access to Plaintiff's premises was specifically prohibited by order of a civil authority; and  that the order(s) from a civil authority was the direct result of direct physical loss or direct physical damage to property in the immediate area within one mile of the insured premises.

130.  Plaintiff (1) experienced a necessary suspension of its operations (2) the suspension was caused by direct physical loss of or damage to property at the premises described in the policy and (3) the loss of or damage to property was caused by a covered cause of loss i.e. risk of direct physical loss that is not excluded.

131.    The presence of COVID-19 and the Closure Orders (and similar civil authority orders) constitute a Covered Cause of Loss, as they constitute "RISKS OF DIRECT PHYSICAL LOSS."

132.    Business Income coverage is found in the Policy's Business Income (And Extra Expense) Coverage Form and provides, in relevant part, as follows:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations . . . . The loss or damage must be caused by or result from a Covered Cause of Loss. . . .

133.    Plaintiff  experienced a necessary suspension of its operations.

134.     The suspension was caused by direct physical loss of or damage to property at the premises described in the Policy.

135.    The loss of or damage to property was caused by a Covered Cause of Loss, i.e., a risk of direct physical loss that is not excluded.

136.    The suspension of Plaintiff's operation was caused by "direct physical loss of or physical damage to property" in the form of both a loss of access to the property for business purposes caused by COVID-19, and the Closure Orders and the actual damage in the form of the physical presence of COVID-19 on the property and within one mile of the insured property.

### D.    <u>Impact on Plaintiffs</u>

137.    As a result of the Orders referenced, herein, Plaintiff 100 ORCHARD STREET, LLC. d/b/a BLUE MOON HOTEL sustained massive business income losses.

138.    Plaintiff's business loss occurred when the State of New York declared when the State of New York declared a State of Emergency on March 7, 2020. It suffered further when the State of New York required all non essential businesses to shut down on March 20, 2020.

139.    Prior to March 7, 2020 Plaintiff was opened to guests for all hospitality and lodging

needs. Plaintiffs' hotel is not a closed environment, and because people – staff, guests, community members, and others – constantly cycle in and out of the subject hotel, there is an ever-present risk that the Covered Properties are contaminated and would continue to be contaminated. In fact, it's probable that Plaintiffs premises suffered contamination based upon guests later being diagnosed as suffering from Coronavirus (COVID-19).

140.    Businesses like the Plaintiff's hotel premises are more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be retained on the Covered Properties and remain viable for far longer as compared to a facility with open-air ventilation.

141.    Plaintiff's business is also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the service nature of the businesses place staff and guests in close proximity to the property and to one another and because the nature of a hospitality premises involves a high level of respiratory droplets and fomites being released into the air of the property during routine hotel activities and contacting hotel and hospitality equipment.

142.    The City of New York issued an Emergency Executive Order in response to COVID-19 and the Pandemic, in part, "because the virus physically is causing property loss and damage."

143.    COVID-19 particles have been physically present at Plaintiff's premises described in the Policy during the Policy period.

144.    COVID-19 particles have been physically present on surfaces and items of property located at Plaintiff's premises described in the Policy during the Policy period.

145.    Airborne COVID-19 particles have been physically present at Plaintiff's premises described in the Complaint during the Policy period.

146.    Plaintiff has sustained direct physical loss of and/or damage to items of property located at its premises and direct physical loss of and/or damage to its premises described in the Policy as a result of the presence of COVID-19 particles and/or the Pandemic.

147.    That a covered cause of loss caused damage to property other than property at the insured premises and Plaintiff sustained actual loss of business income and extra expenses were incurred caused by action of civil authority that prohibited access to the insured premises.

148.    That access to the area immediately surrounding the damaged property was prohibited by civil authority as a result of the damage and the insured premises was and is within one mile from damaged property.

149.    That actions of civil authorities were taken in response to dangerous physical conditions resulting from the damage and/or continuation of the covered causes of loss that caused the damage and/or that action was taken to enable a civil authority to have unimpeded access to the damaged property.

150.    Civil authority orders prohibited access to the insured premises. The prohibited access to the insured premises was in response to dangerous physical conditions resulting from damaged property off premises within an area not more than one mile from the insured premises. The damage to property was caused by or resulting from a Covered Cause of Loss.

151.    The governmental orders implicated the Civil Authority coverage, because access to the scheduled premises was prohibited by order of a civil authority as the direct result of a "RISK[] OF DIRECT PHYSICAL LOSS" to property in the immediate area of the insured premises and within one mile of same.

152.    All of the various governmental orders affecting Plaintiffs' insured premises were issued in direct response to both the spread and physical presence of COVID-19 on persons and property throughout the areas immediately surrounding Plaintiffs' insured premises within a one mile

vicinity as well as the hazards posed by exposure to any human respiratory droplets within that same area.

153.    Civil Authority Orders seriously crippled virtually all hotel revenue demand drivers (i.e. businesses, restaurants, entertainment venues, schools and so forth). This had led to disastrous consequences for hotel businesses such as Plaintiff, by severely reducing demand, disrupting operations and supply chains, causing a loss of income

154.    Plaintiff submitted timely insurance claims to defendant.

155.    Any purported viral exclusion does not apply here because a legal proximate cause of the Plaintiffs losses was the civil authority orders issued by the State of New York and similar civil authority orders.

156.    Also, while the policy contains a virus exclusion – the policy does not exclude coverage for a national state of disaster like the current pandemic. The insurance industry knows how to exclude "pandemics and epidemics" and has done so in other contexts. See, https://www.travelinsurance.com/brochure/Allianz/Allianz_Basic_FL_0216.pdf   ("You   aren't covered for any loss that results directly or indirectly from any of the following general exclusions. The following Events: an epidemic or pandemic[.]"). Here it did not.

157.    The simple truth is that Defendant pre-determined its intent to deny coverage for any business interruption claim related to COVID-19 pandemic and civil authority orders connected to the COVID-19 pandemic; which explains the quick and cursory denial of the claims timely submitted to defendants herein.

158.    A declaratory judgment determining that the coverage provided under the Policy will prevent the Plaintiff from being left without vital coverage acquired to ensure the survival of the businesses due to the shutdown caused by the Civil Authority Orders is necessary. As a result of these Orders, Plaintiff has incurred, and continue to incur, among other things, a substantial loss

of business income and additional expenses covered under the Policy.

**CAUSE OF ACTION**
**DECLARATORY RELIEF**

159.    Plaintiff re-alleges and incorporate by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

160.    The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); see also, Columbus McKinnon Corp. v. SST Casting, Inc., No. 08-CV-1672, 2009 WL 1563922, at *3 (W.D.N.Y. June 3, 2009); Dow Jones & Co. v. Harrods Ltd., 346 F.3d 357, 359 (2d Cir. 2003).

161.    An actual controversy has arisen between Plaintiff and the Defendant as to the rights, duties, responsibilities and obligations of the parties under the Policy in that Plaintiff contends and, on information and belief, the Defendant disputes and denies that:

  a.  The Civil Authority Orders constitute a complete or partial prohibition of access to Plaintiffs' Covered Properties;

  b.  The prohibition of access by the Civil Authority Orders has specifically "prohibit[ed] access to the premises" in whole or in part as set forth in the Policy's Civil Authority provision;

  c.  The Policy virus exclusion does not apply here;

  d.  The Civil Authority Orders trigger coverage;

  e.  The Policy includes coverage for losses caused by the Civil Authority Orders;

  f.  The Policy includes coverage for losses caused by the Coronavirus;

  g.  The Policy provides coverage to Plaintiffs for any current and future civil authority closures of businesses in New York County and New York State due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters;

h. The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Covered Properties; and,

i. Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

162. Plaintiff seeks a Declaratory Judgement to determine whether the Civil Authority Orders prohibit access to the premises in whole or in part of Plaintiff's Covered Property as set forth in the Policy's Civil Authority provision.

163. Plaintiff further seeks a Declaratory Judgement to affirm that the Civil Authority Orders trigger coverage.

164. Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future Civil Authority closures of businesses in New York County and New York State due to physical loss or damage from the Coronavirus and the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Covered Property.

165. Plaintiff does not seek any determination of whether the Coronavirus is physically in or at the Covered Property specifically, the amount of damages, or any other remedy other than declaratory relief.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff herein prays as follows:

1) For a declaration that the Civil Authority Orders constitute a prohibition of access in whole or in part to Plaintiff's Covered Property.

2) For a declaration that the prohibition of access by the Civil Authority Orders "prohibits access to the premises" in whole or in part as stated in the Policy.

3) For a declaration that the Civil Authority Orders trigger coverage under the Policy.

4) For a declaration that the Policy provides coverage to Plaintiff for any

current, future and continued civil authority closures of businesses in New York County and New York State due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters.

5) For a declaration that the virus exclusion does not preclude coverage of Plaintiff's loss of business income or the physical loss or damage suffered at the Insured Property;

6) For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Covered Property or the immediate area of the Plaintiff's Covered Property; and,

7) For such other relief as the Court may deem proper.

**TRIAL BY JURY IS DEMANDED**

Plaintiff demands a trial by jury.

Dated: December 2, 2020

Respectfully submitted,

*/s/Randolph Janis*
Randolph Janis, Esq.
**DOUGLAS & LONDON. P.C.**
59 Maiden Lane, 6th Floor
New York, New York 10038
Phone: (212) 566 7500
Fax: (212) 566 7501
rjanis@douglasandlondon.com